UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LISA H.,

                Plaintiff,

v.                                                                       1:17-CV-0977 (ATB)

COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON       STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.             OONA M. PETERSON, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge

## **DECISION and ORDER**

      Currently before the Court, is this Social Security action filed by Lisa H. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g). This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5.) The parties have each filed briefs (Dkt. Nos. 9 and 12), addressing the

administrative record of the proceedings before the Commissioner (Dkt. No. 8.)[1] For the reasons set forth below, the Commissioner's decision is AFFIRMED, and Plaintiff's complaint is DISMISSED.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1962, making her 49 years old at the alleged onset date and 54 years old at the date of the ALJ's April 2016 decision. Plaintiff reported obtaining a GED and some vocational education in basic office procedures. Plaintiff has past work as a housekeeper, nurse's aide, and store manager. At the initial level, Plaintiff alleged disability due to peripheral nerve damage, fibromyalgia, chronic pain, numbness, and depression due to chronic pain.

### B. Procedural History

Plaintiff applied for disability insurance benefits on January 2, 2012, alleging disability beginning August 1, 2011. Plaintiff's application was initially denied on April 25, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Dale Black-Pennington on May 30, 2013. (T. 29-65, 493-529.) On July 15, 2013, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 10-28, 459-77.) On December 19, 2014, the Appeals Council denied Plaintiff's request for review. (T. 1-6, 478-83.) Plaintiff filed a civil action in the United States District Court for the Northern District of New York and, upon the consent and stipulation of the parties, Chief United States District Judge Glenn T. Suddaby ordered remand of the July 15,

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

2013, decision for further administrative proceedings on July 17, 2015. (T. 484-87.) The Appeals Council issued an order remanding the case on August 4, 2015, noting that the July 15, 2013, hearing decision did not contain an evaluation of opinions (dated January 5, 2012, and March 28, 2013) from treating physician George Siniapkin, M.D. (T. 488-92.) The Appeals Council noted that, on remand, the ALJ would give further consideration to the treating and non-treating source opinions, give further consideration to Plaintiff's maximum residual functional capacity ("RFC"), and obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base. (T. 490-91.) The Appeals Council also noted that Plaintiff had filed subsequent Title II and Title XVI claims in January 2015 with the Appeals Council's action rendering the subsequent claims duplicative and that the ALJ should associate the claim files and issue a new decision on the associated claims on remand.[2] (*Id*.)

---

[2] Although neither party addresses this issue in their briefs, the Court notes that the ALJ's April 2016 unfavorable decision does not indicate explicit consideration of Plaintiff's subsequent claims filed in January 2015, and particularly the subsequent Title XVI claim, as it lists only a claim for a period of disability and disability insurance and cites only Section 404 of the Regulations throughout, rather than dual citing to both Section 404 and Section 416 (applicable for Title XVI claims). (T. 399-411.) The ALJ also noted Plaintiff's need to establish disability on or before her date last insured of December 31, 2017, for her Title II claim, but does not mention a Title XVI claim. (T. 399.) The Court finds any error by the ALJ in failing to explicitly address Plaintiff's subsequently-filed claims to be harmless as the ALJ did engage in a full analysis of Plaintiff's original Title II claim encompassing the same issues as any subsequent claims. Further, the ALJ does appear to have been aware of the subsequent claims because they were entered into the record as Exhibits 11D and 12D and she proffered them to Plaintiff's counsel on February 19, 2016. (T. 585-95, 612-13.) Plaintiff's subsequent claims also do not address a drastically different time period than her original Title II claim and her date last insured (December 31, 2017) was not at issue at the time of the ALJ's April 2016 decision.

Additionally, while failure to comply with an Appeals Council remand order may constitute legal error and ground for remand, any error committed here was harmless. *See Quimby v. Comm'r of Soc. Sec.*, 09-CV-20, 2010 WL 2425904, at *8 (D. Vt. Apr. 13, 2010), *Report and Recommendation adopted by* 2010 WL 2425903 (D. Vt. June 8, 2010) (citing *Hernandez-Devereaux v. Astrue,* 614 F.Supp.2d 1125, 1134 (D. Or. 2009) (holding that "to the extent that the ALJ here failed to properly follow the Appeals Council's instructions, he committed reversible error only to the extent that such error was not harmless, i.e., only to the extent that substantial evidence does not support the ALJ's ultimate conclusions"). As discussed

On January 27, 2016, Plaintiff appeared at a hearing before ALJ Black-Pennington and testimony was taken from a VE as well as a medical expert. (T. 417-58.) On April 11, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 396-416.) Plaintiff subsequently submitted written exceptions to the ALJ's decision to the Appeals Council and the Appeals Council issued a denial on August 2, 2017, finding no reason to assume jurisdiction or disturb the final decision of the ALJ. (T. 389-95, 570-71.) Plaintiff filed the present action on August 31, 2017, seeking review of the April 2016 unfavorable decision, which constitutes the Commissioner's final decision.

C. The ALJ's April 2016 Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. (T. 401-11.) First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. (T. 401.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date. (*Id*.) Third, the ALJ found that Plaintiff's depression, degenerative disc disease of the lumbar and cervical spine, and complaints of chronic pain are severe impairments. (T. 401-02.) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 402-03.) Specifically, the ALJ considered Listing 12.04 (affective disorders). (*Id*.) Fifth, the ALJ found that Plaintiff has the RFC to perform light work except she:

> can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; is able to follow and understand simple instructions

---

in Section III.A. of this Decision and Order, the ALJ's analysis of Dr. Siniapkin's March 2013 opinion is supported by substantial evidence and remand is not required on that basis. Because the ALJ's failure to explicitly address Plaintiff's subsequent claims does not affect her ultimate conclusions, and she does seem to have been aware of the subsequent claims based on the record, the Court finds any error therein harmless and that remand is not required on this basis.

and directions; is able to perform simple routine tasks; is able to occasionally crouch; is not able to squat; is expected to have less than one unscheduled monthly absence each month; able to occasionally twist, stoop and climb ramps; not able to climb ladders, ropes and scaffolds; and requires the ability to move about and change [positions].

(T. 403.) Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 409-10.) Seventh, and last, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (T. 410-11.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings

#### 1. Plaintiff's Brief

In her brief, Plaintiff argues that the ALJ erred by failing to follow the treating physician rule because the ALJ failed to comprehensively set forth her reasons for not giving controlling weight to the March 2013 opinion of treating physician Dr. Siniapkin. (Dkt. No. 9, at 3-11.) Specifically, Plaintiff argues that the ALJ did not discuss how Dr. Siniapkin's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques (such as MRIs of the cervical and lumbar spine or EMG study) or whether the opinions were consistent with other substantial evidence (such as opinions of other medical experts). (*Id*. at 5-11.)

Additionally, Plaintiff argues that the ALJ failed to explicitly consider the regulatory factors in light of her decision not to afford controlling weight to Dr. Siniapkin's opinion. (*Id*. at 9-11.) Plaintiff also argues that although the opinion of medical expert Tonya Fuller, M.D. is consistent with Dr. Siniapkin's opinion, the ALJ conversely afforded great weight to Dr. Fuller's opinion. (*Id*. at 7-8.) Plaintiff contends that the ALJ failed to give good reasons for not affording controlling weight to Dr. Siniapkin's opinion, and any explanation provided by Defendant now must fail as *post-hoc* rationalization. (*Id*. at 8.) Plaintiff also contends that

5

although Dr. Siniapkin's opinion is consistent with the RFC finding (indicating Plaintiff has the capability to lift 20 pounds occasionally), it diverges from the RFC in that Dr. Siniapkin opined Plaintiff would need to take unscheduled breaks, could walk/stand for four hours in an 8-hour workday, would frequently experience symptoms that would interfere with attention and concentration, and would be absent more than four days per month. (Dkt. No. 9, at 7.)

### 2. Defendant's Brief

Defendant argues that the ALJ properly evaluated Dr. Siniapkin's opinion (Dkt. No. 12, at 7-18) and properly afforded some weight to this opinion, after a review of the record and pursuant to the regulatory factors. Defendant argues, further, that a recitation of each and every regulatory factor is not required where, as here, the ALJ's reasoning and adherence to the regulation is clear and it is obvious the substance of the treating physician rule was not traversed. (*Id*. at 9.)

Defendant contends that the ALJ took into account Dr. Siniapkin's specialization as a primary care doctor and his status as Plaintiff's treating physician over an extended period of time. (*Id*. at 10.) Defendant argues the ALJ clearly considered the supportability and consistency of Dr. Siniapkin's opinion both with his own treatment notes and with the record as a whole in making the determination to grant the opinion some weight. (*Id*. at 10-18.) Defendant additionally argues that the RFC is consistent with Dr. Siniapkin's opinion. Defendant contends, further, that the ALJ properly discussed and granted substantial weight to the opinions of state agency review psychologist M. Butensky and consultative examiner Kautilya Puri, M.D., great weight to the opinion of medical expert Dr. Fuller, and significant weight to the opinion of consultative examiner Mena Stramenga, Ph.D. (*Id*. at 10-11, 15-17.) Defendant argues that the RFC is consistent with, or more restrictive than, these opinions.

Finally, defendant contends that Dr. Stramenga's consultative opinion provides substantial evidence for the ALJ's decision, including his finding of only mild limitations in concentration (demonstrating the ALJ had good reason to reject Dr. Siniapkin's finding that Plaintiff's symptoms would interfere with her concentration and attention frequently). (*Id*. at 17-18.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

7

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

III. ANALYSIS

    A.    **Substantial Evidence Supports the ALJ's Analysis of Dr. Siniapkin's Opinion**

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d at 31–32). *Accord*, e.g., *Jones v. Colvin*, 2017 WL 758511, at *4–5 (N.D.N.Y. Feb. 27,

9

2017); *Phillips v. Comm'r of Soc. Sec.*, No. 6:17-CV-057 (WBC), 2018 WL 1768273, at *4 (N.D.N.Y. Apr. 11, 2018). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

In March 2013, Plaintiff's primary care physician Dr. Siniapkin completed an RFC questionnaire and opined that Plaintiff could walk half a block without rest or severe pain, sit for 30 minutes before needing to get up for a total of about four hours, and stand for 30 minutes before needing to move for a total of about four hours for a combination of standing/walking.

(T. 296.) Dr. Siniapkin also opined that Plaintiff would require periods of walking during an eight-hour workday and that she required a job that would permit shifting positions at will. (T. 297.) He indicated Plaintiff would need to take unscheduled breaks during an eight-hour workday, she could frequently lift up to 10 pounds, occasionally lift up to 20 pounds, and rarely lift up to 50 pounds, and she could occasionally twist, stoop, crouch/squat, and climb. (*Id.*) He also indicated that Plaintiff's pain or other symptoms were frequently severe enough to interfere with the attention and concentration needed to perform simple work tasks and that she would be absent from work more than four days a month. (*Id.*) He noted the earliest date of symptoms and limitations he described was August 30, 2011. (*Id.*)

The ALJ noted Dr. Siniapkin's opinion and afforded it some weight because he had treated Plaintiff over an extended period, taking into account the first factor of 20 C.F.R. § 404.1527(c). (T. 408.) The ALJ adopted many of Dr. Siniapkin's conclusions when formulating her RFC. The RFC allows for Plaintiff to move about and change positions without limitations, addressing Dr. Siniapkin's opinion that Plaintiff could only sit or stand for 30 minutes at a time before needing to get up if sitting, or move if standing. (T. 296, 403.)[3] The RFC for light work – lifting 20 pounds occasionally and 10 pounds frequently – is also consistent with Dr. Siniapkin's

---

[3] Plaintiff's counsel argued that the ALJ's RFC of light work was inconsistent with Dr. Siniapkin's opinions because light work requires intermittently standing or walking for a total of approximately six hours of an eight-hour workday, and Dr. Siniapkin opined that plaintiff could only sit and stand/walk for a total of four hours each during a workday. (Pl.'s Br. at 7, Dkt. No. 9.) However, in clarifying her RFC in the hypotheticals posed to the VE, the ALJ asked about the ability of an individual to work who was able to "stand or walk . . . four of eight hours" in up to "20-minute intervals," alternating with sitting. (T. 452-53.) The VE opined that a hypothetical individual with those limitations could work several "light work" jobs in the national economy that allowed the person to stand or sit at will, even though light work generally required an ability to stand or walk for six out of eight hours during the workday. (T. 453-454.) Thus, the ALJ's RFC, as clarified in hypotheticals to the VE, was consistent with Dr. Siniapkin's opinion with respect to plaintiff's limitations for standing or walking. *See Whitehouse v. Colvin,* No. 3:13-CV-894, 2014 WL 4685187, at *14 (D. Conn. Sept. 19, 2014) (finding that RFC limiting plaintiff to "low stress tasks" was not unduly vague, in part because the ALJ's hypotheticals to the VE included additional details with respect to plaintiff's limitations in this regard).

11

opinion that Plaintiff could lift such weights. (T. 297, 403.) Furthermore, the ALJ incorporated Dr. Siniapkin's opinion that Plaintiff could only occasionally twist, stoop, crouch, and climb, and was actually more restrictive than Dr. Siniapkin, in that the ALJ determined Plaintiff could not squat. (T. 297, 403.)

The ALJ found, however, that the evidence did not support Dr. Siniapkin's conclusion that Plaintiff required unscheduled breaks and was likely to be absent four days per month due to her impairment or treatment, and did not adopt these limitations in her RFC. (*Id*.) Plaintiff argues that the ALJ erred by failing to follow the treating physician rule because the ALJ did not comprehensively set forth persuasive reasons for not affording controlling weight to all of Dr. Siniapkin's treating opinion and, in doing so, failed to explicitly consider the regulatory factors. (Dkt. No. 9, at 3-11.) Although the ALJ's analysis of the opinion evidence may be cursory in some respects, it does provide reasons that are supported by the record. And, as discussed below, the ALJ's analysis did take adequate account of the regulatory factors relating to the treating physician rule.

The ALJ suggested that Dr. Siniapkin's more restrictive opinions were belied by normal or near normal clinical findings on multiple occasions, on examination by Dr. Siniapkin, or on testing or consultations ordered by him. (T. 404-05, 409) ("the above residual functional capacity assessment is supported by the objective evidence including the claimant's normal or near normal findings on examinations by her primary care physician, Dr. Siniapkin on multiple occasions, neurologist, Dr. Wharton, physical medicine and rehabilitation specialist, Dr. Jorgensen.")[4]  Hence, the AJL considered the extent to which Dr. Siniapkin's opinions were

---

[4] Defendant's Brief (at 10-12, Dkt. No. 12), provides numerous examples of normal examinations or testing of plaintiff upon which the ALJ relied.

12

supported by his own clinical findings, consistent with the second factor of 20 C.F.R. § 404.1527(c).

The ALJ also documented that his RFC was supported by the medical opinions of numerous consultants and specialists, clearly indicating that the ALJ considered the consistency of Dr. Siniapkin's opinions with the remaining medical evidence, satisfying the third factor of 20 C.F.R. § 404.1527(c). (T. 409.) The ALJ evaluated medical opinions from, inter alia, medical expert, Dr. Fuller; consultative medical examiner, Dr. Puri; consultative examining psychologist, Dr. Stramenga; and state agency review psychologist, Dr. Butensky.

The ALJ's finding that the evidence did not support Dr. Siniapkin's conclusion that Plaintiff requires unscheduled breaks and was likely to be absent four days per month due to her impairment or treatment (T. 408) was supported by the ALJ's discussion of the medical opinions of Dr. Fuller and Dr. Puri. (T. 407-08.) The ALJ afforded great weight to the opinion of medical expert, Dr. Fuller, that Plaintiff had no neurological impairments, because Dr. Fuller was a neurologist who had the opportunity to evaluate all of Plaintiff's available records, including those documenting 14 normal neurological examinations. (T. 407, 409, 445-46.)[5] Dr. Fuller testified that he would not expect Plaintiff to lift more than 20 pounds and would understand if Plaintiff needed to take breaks and could not sit, walk, or stand for a long time (T. 447); but the ALJ took these restrictions into account in her RFC by limiting Plaintiff to lifting no more than 20 pounds at a time and allowing her to move about and change position, essentially at will. (T. 403, 451-54.)

---

[5] This reflects the ALJ's consideration of which of the providers who examined plaintiff were specialists, consistent with the fourth factor of 20 C.F.R. § 404.1527(c).

Further, the ALJ afforded substantial weight to Dr. Puri's consultative opinion based upon his examination of Plaintiff in April 2012. (T. 407.) Dr. Puri noted at the consultative examination that Plaintiff appeared to be in no acute distress, she had a normal gait and stance, she could stand on her heels and toes (though she said she could not walk on them), her squat was mildly less than halfway decreased, she used no assistive devices, she needed no help changing for the exam or getting on and off the examination table, and she was able to rise from a chair without difficulty. (T. 229.) She had decreased range of motion in her lumbar spine and full range of motion in her bilateral shoulders, elbows, forearms, wrists, hips, knees, and ankles. (T. 230.) Dr. Puri noted approximately eight trigger points in the bilateral neck, shoulders, and back, and indicated that Plaintiff's deep tendon reflexes ("DTRs") were physiologic and equal in the upper and lower extremities. (*Id*.) He noted that plaintiff had no sensory deficits, full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally. (*Id*.)

Dr. Puri diagnosed asthma, fibromyalgia, low back pain with mid-back pain of unknown etiology, acid reflux disease, peripheral neuropathy of unknown etiology and depression and opined that Plaintiff did not have any objective limitation to communication, fine motor, or gross motor activity. (T. 230-31.) Dr. Puri also opined, on examination, that Plaintiff had mild limitations to squatting and she had no objective limitations to her gait or to her activities of daily living. (T. 231.) He recommended that she not carry out strenuous activity or be in an environment which would increase her respiratory complaints. (*Id*.) The ALJ gave substantial weight to the opinion of consultative examiner Dr. Puri that, inter alia, plaintiff had no objective limitation to communication, fine motor, gross motor activity, or activities of daily living,

14

because his opinion was consistent with an examination of Plaintiff and with the objective evidence of record. (T. 230-31, 407.)

The ALJ also provided an explanation for discounting Dr. Siniapkin's opinion concerning Plaintiff's limitations on attention and concentration. The ALJ afforded significant weight to Dr. Stramenga's opinion that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, learn new tasks, make appropriate decisions, and relate adequately with others while also having mild difficulties maintaining attention and concentration, maintaining a regular schedule, performing complex tasks independently, and appropriately dealing with stress. The ALJ also gave substantial weight to Dr. Butensky's opinion, which indicated Plaintiff's psychiatric impairment was non-severe, because the psychologist's opinion was substantiated by specific exhibits and was consistent with the objective evidence in the record. (T. 232-36, 237-50, 408-09.)

It was within the ALJ's purview to weigh the evidence of record (including the various medical opinions) and resolve any conflicts therein. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). Therefore, the Court finds that the reasons provided by the ALJ in affording some (but not substantial or controlling) weight to Dr. Siniapkin's treating opinion are supported by substantial evidence and consistent with her analysis of the other medical opinions of record.

Although Plaintiff argues that the ALJ erred in failing to explicitly consider the regulatory factors when assessing Dr. Siniapkin's opinion and deciding to afford it less than

controlling weight, the ALJ's decision indicates otherwise. (Dkt. No. 9, at 9-11.) The ALJ noted she had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-3p. (T. 403.) Although the ALJ may not have "slavishly" listed each of the regulatory factors when assessing the treating physician's opinion, her analysis of the evidence of record and her overall decision, as discussed above, indicate she adequately considered the factors and supported her reasoning with sufficient analysis.

For the reasons above, the ALJ's analysis of Dr. Siniapkin's opinion was consistent with the "treating physician rule" and is supported by substantial evidence. Remand is therefore not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that the Commissioner's decision is **AFFIRMED**, and further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED,** and that judgment be entered for the **DEFENDANT.**

Dated: November 30, 2018
Syracuse, New York

_____
Andrew T. Baxter
U.S. Magistrate Judge